No. 432 May 20, 2026 691

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

Karleanne ROGERS,
*Plaintiff-Appellant,*

*v.*

FARMERS INSURANCE COMPANY OF OREGON,
*Defendant-Respondent.*

Multnomah County Circuit Court
22CV38287; A182077

David F. Rees, Judge.

Argued and submitted January 29, 2025.

Lisa T. Hunt argued the cause for appellant. Also on the briefs were Aaron D. Reichenberger, Law Office of Lisa T. Hunt, LLC and Rosenbaum Law Group, PC.

Jacqueline Tokiko Mitchson argued the cause for respondent. Also on the brief were Peder Rigsby, Sean D. McKean and Bullivant Houser Bailey PC.

Before Shorr, Presiding Judge, Powers, Judge, and Pagán, Judge.

POWERS, J.

Reversed and remanded.

Shorr, J., dissenting.

**POWERS, J.**

In this insurance coverage case, plaintiff appeals from a general judgment dismissing her claims against defendant, Farmers Insurance Company of Oregon (Farmers). While driving her Mazda, plaintiff was hit by an underinsured driver, resulting in injuries and economic and noneconomic damages greater than the Mazda Uninsured/Underinsured (UM/UIM) benefits. Plaintiff sought additional UIM coverage available through her policy for another vehicle, also insured by Farmers. Farmers denied that claim, asserting that the policy excludes UIM coverage when the insured occupies a vehicle that she owns that is not a described vehicle on the policy under which coverage is sought. Plaintiff sued for breach of contract, arguing that the policy exclusion was inconsistent with ORS 742.504(4)(b) and thus impermissible. On cross-motions for summary judgment, the trial court concluded that the exclusion was consistent with the model policy provided for in statute and granted Farmers's motion for summary judgment and denied plaintiff's motion. As explained below, because the policy exclusion is not consistent with ORS 742.504(4)(b), we reverse and remand.

On review of cross-motions for summary judgment, we view the record for each motion in the light most favorable to the party opposing it to determine whether there is a genuine issue of material fact and, if not, whether either party is entitled to judgment as a matter of law. *O'Kain v. Landress*, 299 Or App 417, 419, 450 P3d 508 (2019).

The relevant background facts are few and undisputed. Plaintiff had two insurance policies with Farmers—the Mazda policy and the Lexus policy—and each provided for $100,000 UIM coverage. While driving her Mazda, plaintiff was hit by a driver traveling at a high speed. The collision caused plaintiff numerous injuries, resulting in medical bills in excess of $100,000 and total economic and noneconomic damages alleged at $750,000, subject to proof at trial. The at-fault driver had a liability coverage limit of $15,000, which was paid to plaintiff. Farmers paid plaintiff the $100,000 UIM policy limit issued for her Mazda. Farmers, however, denied UIM coverage in the second Farmers policy

issued for plaintiff's Lexus. Plaintiff initiated the underlying action against Farmers, alleging that the denial of coverage under the Lexus policy was a breach of contract.

The parties filed cross-motions for summary judgment. At the hearing on the motions, the parties disputed whether the UIM exclusion set forth in Farmers's policy was enforceable and authorized under Oregon's UIM model policy, as described in ORS 742.504, which we set out below.[1] The court concluded that, because the terms of the Lexus policy were consistent with the model policy in the statute, the exclusion was enforceable. Accordingly, it granted Farmers's motion for summary judgment and denied plaintiff's motion. Plaintiff timely appealed.

On appeal, plaintiff renews her argument that, under Farmers's interpretation, the application of the policy exclusion results in less favorable coverage than the coverage required under the model policy set forth in ORS 742.504(4)(b) and Oregon's UIM law as construed in *Batten v. State Farm Mutual Automobile Ins. Co.*, 368 Or 538, 495 P3d 1222 (2021). Plaintiff asserts that the Mazda is "an insured vehicle" within the meaning of the statute, and therefore, the exclusion in the Lexus policy is unenforceable. In support of her argument, plaintiff cites legislative history and notes that, in 2015, the legislature amended the UIM laws to allow "stacking" from the at-fault party's liability policy and the insured's policies, and that the legislature did not amend the exclusions set forth in section (4), thereby showing—plaintiff argues—that section (4) does not have an anti-stacking intent. Plaintiff maintains that, with respect to UIM coverage, the protection follows the person, not the vehicle.

For its part, Farmers agrees that typically UIM follows the person but contends that there are permissible exclusions, such as the one described in ORS 742.504(4)(b), and that this case falls within that permissible exclusion. In Farmers's view, ORS 742.504(4)(b) unambiguously excludes UIM coverage when the insured occupies a vehicle that she

---

[1] ORS 742.504 has been amended since the underlying incident in this case. Or Laws 2024, ch 73, § 153. Because the amendments do not affect our analysis, we refer to the current version of the statute in this opinion.

owns that is not a described vehicle on the policy under which coverage is sought. That is, Farmers remonstrates that, although the legislative history supports a conclusion that UIM coverage may be stacked with liability coverage that the insured was able to collect from the at-fault driver, it does not reveal an intent by the legislature to allow an insured to recover UIM benefits while driving a vehicle that is not insured under the particular policy from which the insured seeks coverage. Farmers also relies on federal case law, which has determined that similar exclusions are valid under Oregon law.

As an initial matter, we begin with an overview of the governing framework. In Oregon, insurance coverage for loss caused by an uninsured or underinsured motor vehicle is almost entirely a creature of statute. ORS 742.500 to 742.506; *see Batten*, 368 Or at 542 (so describing). The legislature requires that "[e]very motor vehicle liability policy" must provide for "uninsured motorist coverage" and "underinsurance coverage." ORS 742.502(1)(a), (5). UIM coverage is insurance against the loss that occurs when an insured suffers "bodily injury or death" related to a motor vehicle accident for which another person is at fault and the at-fault person has insufficient liability insurance to pay the damages that the injured person would have been "legally entitled to recover" in a civil action against the at-fault person. ORS 742.502(5); ORS 742.504(1)(a).

The legislature has set out in ORS 742.504 "a comprehensive model" policy of UM/UIM coverage. *Vega v. Farmers Ins. Co.*, 323 Or 291, 302, 918 P2d 95 (1996). The model policy requires that all automobile insurance policies "shall provide uninsured motorist coverage that in each instance is no less favorable in any respect to the insured or the beneficiary than if the following provisions were set forth in the policy." ORS 742.504. The comprehensive UM/UIM model policy "may be varied only in the sense that terms that disfavor insureds may be excluded or softened and extraneous terms that are neutral or that favor insureds may be added." *Vega*, 323 Or at 302; *see also Sheppard v. Progressive Classic Ins. Co.*, 375 Or 262, 273, ___ P3d ___ (2026) (reiterating *Vega* and explaining that the "model policy set forth

under that statute represents the minimum coverage; that is, an actual policy must provide coverage at least as favorable to the insured as the model"). Therefore, to determine the enforceability of a provision for UIM coverage, we must compare the coverage provided in the challenged policy with the coverage provided by the provisions set forth in ORS 742.504. *See Vega*, 323 Or at 299 (explaining "that the validity of a challenged UIM provision must be tested, not by a direct comparison between the challenged provision with an individual statutory provision but, instead, by a comparison between coverage offered by the policy containing the challenged provision and the coverage offered by a hypothetical policy containing the provisions set out at ORS 742.504(1) to (12)").

When a question of statutory interpretation arises in an insurance coverage dispute, we resolve it "by applying familiar rules requiring us to determine the meaning of the words of the statute most likely intended by the legislature that enacted it, taking into account its text in context and the relevant legislative history." *Spearman v. Progressive Classic Ins. Co.*, 361 Or 584, 590, 396 P3d 885 (2017) (citing *State v. Gaines*, 346 Or 160, 171-73, 206 P3d 1042 (2009)); *Vega*, 323 Or at 300 (explaining that, where a statutory provision controls a UIM policy provision, we resolve the question by applying the methodology for interpreting statutes).

We begin with common ground. The parties' arguments acknowledge that the Lexus policy provides that Farmers "will pay all sums which an insured person is legally entitled to recover as damages from the owner or operator of an uninsured or underinsured motor vehicle because of bodily injury sustained by the insured person." The Lexus policy specifies various exclusions, including that the coverage does not apply to bodily injury sustained by a person "[w]hile occupying any vehicle owned by you or a family member for which insurance is not afforded under this policy or through being struck by that vehicle." Based on that language, the parties agree that the Lexus policy excludes UIM coverage for plaintiff in this scenario.

The parties also agree that ORS 742.504 requires that "[e]very policy required to provide the coverage

specified in ORS 742.502 shall provide uninsured motorist coverage that in each instance is no less favorable in any respect to the insured or the beneficiary than if the following provisions were set forth in the policy." ORS 742.504(1)(a) requires that "the insurer will pay all sums that the insured *** is legally entitled to recover as damages from the owner or operator of an uninsured vehicle because of bodily injury sustained by the insured caused by accident and arising out of the ownership, maintenance or use of the uninsured vehicle." Finally, the parties' arguments proceed from the assumption that, at least generally, UIM coverage follows the person, not the vehicle. *See Batten*, 368 Or at 540 (concluding that the insurer must pay UM/UIM benefits under all applicable policies).

The parties' dispute centers on their interpretation of ORS 742.504(4)(b), which describes permissible exclusions from the UIM coverage, including that the "coverage does not apply to bodily injury to an insured while occupying a vehicle, other than an insured vehicle, owned by, or furnished for the regular use of, the named insured or any relative resident in the same household, or through being struck by the vehicle." The parties specifically disagree as to whether the Mazda qualifies as "an insured vehicle" under that exclusion.

ORS 742.504(2) includes definitions for both "insured vehicle" and "uninsured vehicle." An "insured vehicle," as defined in the model policy and as relevant here, includes "the vehicle described in the policy or a newly acquired or substitute vehicle, ***." ORS 742.502(2)(d)(A). In contrast, an "uninsured vehicle" includes, as relevant here, a "vehicle with respect to the ownership, maintenance or use of which there is no collectible motor vehicle bodily injury liability insurance, *** applicable at the time of the accident with respect to any person ***." ORS 742.504(2)(k)(A). Importantly, ORS 742.502(2)(L)(F) explicitly provides that an "uninsured vehicle" does not include a "vehicle owned by or furnished for the regular or frequent use of the insured or any member of the household of the insured."

Weaving those definitions together, it becomes apparent that the Mazda was not an "uninsured vehicle."

That is, it is undisputed that the Mazda was a "vehicle owned by or furnished for the regular or frequent use of" plaintiff. *See* ORS 742.504(2)(L)(F). It is also undisputed that the Mazda was not a vehicle for "which there [was] no collectible motor vehicle bodily injury liability insurance, * * * applicable at the time of the accident with respect to any person." *See* ORS 742.504(2)(k)(A). Therefore, under the terms of the model policy, the Mazda would not be an "uninsured vehicle." That conclusion then informs how to view the definition of an "insured vehicle," meaning the phrase "the vehicle described in the policy," as used in the definition of "insured vehicle," means the policy associated with that vehicle.

Farmers asserts that, because the definition of "insured vehicle" limits it to the vehicle described in "the policy," the plain text clearly and unambiguously allows for the exclusion, given that the Mazda is not described in the Lexus policy. Although that is a plausible interpretation when viewed in isolation, the text becomes ambiguous when we consider it in the context of the definition of "uninsured vehicle" and the specific exclusion of uninsured vehicles. We recognize that, in some instances, the legislature's use of the definite article "the" can inform our statutory analysis. *See, e.g.*, *Carroll and Murphy*, 186 Or App 59, 68, 61 P3d 964 (2003) (drawing a distinction between the definite article "the" from the indefinite article "a" as an indication that the legislature was referring to a specific, previously mentioned statutory phrase, rather than any instance of that phrase). Here however, because the legislature also provided a definition of "uninsured vehicle," we cannot rely on the use of the definite article "the" as indicative of the legislature's intent. Indeed, although the legislature used the term "the policy" and Farmers contends that "the policy" actually means "this policy," it is particularly significant that the legislature did not use "this policy" in this part of the statutory framework like it did elsewhere. *Compare* ORS 742.504(2)(d)(A) (providing that an "Insured vehicle" means "[t]he vehicle described in *the policy* * * *" (emphasis added)) *with* ORS 742.504(1)(b) (providing that no judgment against a person or organization "alleged to be legally responsible for bodily injury, except for proceedings instituted against

the insurer as provided in *this policy*, shall be conclusive \*\*\*, as between the insured and the insurer, on the issues of liability of the person or organization or of the amount of damages to which the insured is legally entitled" (emphasis added)).

To the extent that Farmers argues that a vehicle can be neither an insured nor uninsured vehicle, we reject that argument. We are not persuaded that the legislature intended to make a third, unspecified class of vehicles that is neither insured nor uninsured when it enacted the model UM/UIM policy terms. Thus, we reject Farmers's contention that the term "the policy" is as narrow as Farmers asserts.

Moreover, as a practical matter, the parties agree that if plaintiff had been hit by an underinsured driver while biking, walking, or as a passenger in a non-owned vehicle that was not available for her regular use, she would be able to recover under both the Mazda and Lexus UIM coverages. *See Batten*, 368 Or at 540 (concluding that when a cyclist, a passenger in a rented car, and a pedestrian suffered losses that were within the scope of UM/UIM coverage—and each plaintiff had multiple applicable policies with UM/UIM coverage—the insurer was required to pay the plaintiffs under all of the applicable policies). We decline to create the anomaly that Farmers's interpretation would establish, *viz.*, while driving her owned and insured vehicle, plaintiff would have less coverage than when walking or as a passenger in another vehicle.

To the extent Farmers points to federal decisions that have reached a contrary result, we note that those decisions are not binding on us. *See Shaw v. PACC Health Plan, Inc.*, 322 Or 392, 401 n 8, 908 P2d 308 (1995) (observing that federal court decisions, other than those issued by the Supreme Court, are not binding on Oregon courts). Furthermore, nothing in those opinions persuade us that our conclusion, which is rooted in the text and context as required by Oregon law, is incorrect. Finally, we have reviewed the legislative history surrounding the 2015 amendments to ORS chapter 742, and we did not find any pertinent legislative history that shed additional light on the legislature's intent.

Ultimately, because the text and context of the model policy are such that the Mazda is "an insured vehicle," and thus is not included in the exclusion, we conclude that the Farmers policy terms do not comply with Oregon law and are, therefore, unenforceable. *See Sheppard*, 375 Or at 273 ("If any policy term is less favorable to the insured than the model policy, then that term is unenforceable."). Accordingly, the trial court erred by granting Farmers's motion for summary judgment and denying plaintiff's motion.

Reversed and remanded.

**SHORR, P. J.,** dissenting.

I respectfully dissent from the majority's conclusion that the Lexus policy exclusion is inconsistent with ORS 742.504(4)(b). As explained below, I would conclude that the exclusion is consistent with the statute and that the trial court therefore did not err in granting defendant's motion for summary judgment.

The relevant portion of the Lexus policy stated:

"(3)   This coverage does not apply to bodily injury sustained by a person:

"(a)   While occupying any vehicle owned by you or a family member for which insurance is not afforded under this policy or through being struck by that vehicle.

"* * * * *

"(4)   This coverage does not apply to bodily injury sustained by an insured person while occupying any vehicle (other than your insured car) owned by, or furnished for the regular use of, you or a family member or through being struck by that vehicle."

The exclusion applies to the situation at hand: plaintiff was injured while occupying the Mazda (a vehicle owned by her) and insurance was not afforded to the Mazda under the Lexus policy. The question thus becomes whether the exclusion is enforceable.

The legislature has set out in ORS 742.504 a "comprehensive model" policy for uninsured and underinsured motorist coverage. *Vega v. Farmers Ins. Co.*, 323 Or 291, 302,

918 P2d 95 (1996). Every policy providing such required coverage "shall provide uninsured motorist coverage that in each instance is no less favorable in any respect to the insured or the beneficiary" than if the provisions contained in ORS 742.504 were set forth in the policy. ORS 742.504. The model policy includes numerous categories of minimum terms, including noting some permissible exclusions. Under ORS 742.504(4)(b) it is permissible for a policy to include the following exclusion:

> "This coverage does not apply to bodily injury to an insured while occupying a vehicle, other than an insured vehicle, owned by, or furnished for the regular use of, the named insured or any relative resident in the same household, or through being struck by the vehicle."

In other words, a policy need not provide coverage for the insured's owned vehicles other than an insured vehicle. The meaning of an "insured vehicle" in that model exclusion is where I part ways with the majority.

ORS 742.504(2)(d) defines "insured vehicle" as

> "(A)  The vehicle described in the policy or a newly acquired or substitute vehicle, as each of those terms is defined in the public liability coverage of the policy, insured under the public liability provisions of the policy; or

> "(B)  A nonowned vehicle operated by the named insured or spouse if a resident of the same household, provided that the actual use thereof is with the permission of the owner of the vehicle and the vehicle is not owned by nor furnished for the regular or frequent use of the insured or any member of the same household."

I read subparagraph (A) as applying to *the* vehicle described in and insured by the specific policy at issue (or a newly acquired or substitute vehicle), and not, as the majority does, as applying to *any* vehicle described in a motor vehicle insurance policy. With that understanding, plaintiff's Mazda was not an "insured vehicle" under the Lexus policy because it was not the vehicle described in the Lexus policy (or a newly acquired or substitute vehicle), and it was not a "nonowned" vehicle as described in subparagraph (B).

Generally, when engaging in statutory construction, Oregon courts have treated the use of the definite

article "the" as signifying a narrow intent, as "a reference to 'something specific, either known to the reader or listener or uniquely specified.'" *Hickey v. Scott*, 370 Or 97, 107, 515 P3d 368 (2022) (quoting *State v. Lykins*, 357 Or 145, 159, 348 P3d 231 (2015)); *see also Carroll and Murphy*, 186 Or App 59, 68, 61 P3d 964 (2003) (explaining that the legislature uses "a," as an indefinite article, to refer to an unidentified, undetermined, or unspecified object and uses "the" to indicate the intention to refer to a definite object). Were ORS 742.504 (2)(d) to define "insured vehicle" as "a vehicle described in a policy" or "a vehicle that is insured," that would signal an intent to use the term to refer to any vehicle covered by an insurance policy. However, I interpret the use of the definite article "the," as to both *the* vehicle and *the* policy, as being limited to the specific policy at issue and the vehicle described therein. Furthermore, read in context, I do not interpret the statute's variable use of "the policy" and "this policy" as creating a distinction. *See, e.g.*, ORS 742.504(3) ("This coverage applies only to accidents that occur on and after the effective date of the policy, during the policy period and within the United States of America, its territories or possessions, or Canada."); ORS 742.504(8) ("No action shall lie against the insurer unless, as a condition precedent thereto, the insured or the legal representative of the insured has fully complied with all the terms of this policy."). Therefore, the permissible exclusion extends to the insured's owned vehicles, other than the vehicle described in the policy at hand. *See also Sheppard v. Progressive Classic Ins. Co.*, 375 Or 262, 271, ___ P3d ___ (2026) (discussing uses of the phrase "furnished for the regular use," as used in ORS 742.504(4)(b), and noting a common automobile insurance policy exclusion: "A policy will state that the policy does not cover liability as to any vehicle that is not expressly covered and that is either owned by the insured or '[f]urnished or available for [the insured's] regular use." (Quoting William J. Schermer and Irvin E. Schermer, 1 *Automobile Liability Insurance* § 6:10 (4th ed Westlaw, updated Nov 2025) (brackets in *Sheppard*).)).

          As the majority points out, that interpretation creates a third category of vehicle that is neither an "insured vehicle" nor an "uninsured vehicle," because "uninsured

vehicle" does not include "a vehicle owned by * * * the insured." ORS 742.504(2)(L)(F). However, I do not understand that result to be a logical inconsistency or an unintended consequence. I do not think that the term "insured vehicle," when given a specific definition for purposes of use in a particular document, must necessarily be the opposite of "uninsured vehicle." The two definitions do not encompass every vehicle in existence and place them in the binary of "insured" or "uninsured" for purposes of the policy at issue. I therefore do not consider it problematic to conclude that the Mazda was neither an insured vehicle nor an uninsured vehicle as those terms are defined in the Lexus policy.

Finally, I do not consider my interpretation to be inconsistent with *Batten v. State Farm Mutual Automobile Ins. Co.*, 368 Or 538, 495 P3d 1222 (2021). In that case, the various plaintiffs were injured while riding as a passenger in a rental car, operating a bicycle, or walking in the street, and the Supreme Court concluded that they could each recover UM/UIM payments from multiple policies. *Batten*, 368 Or at 540-41. The court concluded that the term of the relevant policies that limited coverage to the maximum payout under one policy had the effect of denying payment on the other policies, which was inconsistent with the model terms of ORS 742.504, and thus was unenforceable. *Id.* at 551. Here, I believe the relevant term of the Lexus policy is consistent with the model terms. ORS 742.504(4)(b) reflects a legislative judgment that this particular situation is one in which an insurer may legitimately exclude coverage: A policy need not cover incidents involving the insured's owned vehicles that are not named in that particular policy. The plaintiffs in *Batten* were not injured while occupying their owned vehicles that were not named in the particular policies.

I therefore respectfully dissent.